UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK WOLANIN, #148317,

    Plaintiff,                           CIVIL ACTION NO. 15-12743

vs.                                 DISTRICT JUDGE GEORGE CARAM STEEH

                                       MAGISTRATE JUDGE MONA K. MAJZOUB

ANGELA GIBAS, KENDRA
BURTON, and DANIEL HEYNS,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Frank Wolanin, currently a prisoner at the Baraga Correctional Facility (AMF) in Baraga, Michigan, filed this action under 42 U.S.C. § 1983 against Defendants Angela Gibas (a Corrections Officer at the Saginaw Correctional Facility (SRF)), Kendra Burton (the Transfer Coordinator at SRF), and Daniel Heyns (former Director of the Michigan Department of Corrections (MDOC)) in their individual and official capacities, alleging that he was transferred from SRF to AMF in violation of his First Amendment right to be free from retaliation. (*See* docket no. 1.) Plaintiff seeks $1,000,000 in damages and an order removing Defendants from "any position of authority in the MDOC." (*Id.* at 5.)

Before this Court is Defendants' Motion for Summary Judgment.[1] (Docket no. 19.)

---

[1] Also pending in this matter are Plaintiff's Motion for Discovery (docket no. 9), Plaintiff's Motion for Reconsideration of the Court's Order Denying Appointment of Counsel (docket no. 15), Plaintiff's Motion for Attachment of Property (docket no. 18), Plaintiff's Motion for Default Judgment (docket no. 21), and Plaintiff's Motion to Revisit his Motion for Attachment (docket no. 22). Because Defendants' Motion should be granted, the undersigned will recommend denying these motions as moot.

1

Plaintiff filed a Response. (Docket no. 20.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 5.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.  Recommendation**

For the reasons discussed herein, the Court should grant Defendants' Motion for Summary Judgment (docket no. 19). This matter should be dismissed in its entirety. Accordingly, the remaining outstanding motions in this matter (docket nos. 9, 15, 18, 21, and 22) should be denied as moot.

**II.  Report**

    **A.  Factual Background**

Through his Complaint, Plaintiff alleges that sometime in or around January 13, 2015, while he was imprisoned at SRF, he made a comment regarding an assault on a corrections officer, noting that the assault was "Karma." (Docket no. 1 at 6.) Plaintiff further alleges that this comment was overheard by Defendant Gibas, who then "conspired with [Defendant] Burton" to transfer him to AMF. (*Id.*) Plaintiff contends that this transfer was made in retaliation for his religious beliefs in violation of the First Amendment because Plaintiff "is a devote (sic) believer in the Religious belief of Karma." (*Id.*) Plaintiff's claims against Defendant Heyns rest on the premise that he "is directly culpable . . . due to his deliberate indifference regarding the Plaintiff's Step III Directors Office Grievance, thus allowing his subordinates to continue to act in a Religiously Discriminate manner." (*Id.*)

    **B.  Governing Law**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;
> >
> > (2) consider the fact undisputed for purposes of the motion;
> >
> > (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
> >
> > (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than

3

simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### C. Analysis

Through their Motion for Summary Judgment, Defendants argue that (1) Plaintiff failed to exhaust his administrative remedies with regard to Defendants Heyns or Burton; (2) Plaintiff's claims against Defendant Heyns fail because Defendant Heyns was not personally involved in the alleged constitutional violation; (3) Plaintiff's claims should be dismissed because a transfer from one prison to another does not give rise to a constitutional violation; (4) Defendants are protected by qualified immunity; and (5) Defendants, in their official capacities, are protected by sovereign immunity. (Docket no. 19.) Plaintiff first contends that Defendants' failure to file an Answer or otherwise respond to his Complaint is fatal to their defense. (Docket no. 20 at 1-2.) He then adds that (1) he was not required to exhaust his administrative remedies; (2) even if he was required to exhaust his administrative remedies, he did so by following the proper procedure, he impliedly included Defendant Burton in his grievance, and any complaint he had about Defendant Heyns's actions was non-grievable; (3) his claims against Defendant Heyns should survive because "he was in control of the MDOC and his subordinates when they chose to violate the Plaintiff's [rights];" and (4) Defendants' characterization of the prison transfer is misleading, and the actual transfer itself rises to the level of a constitutional violation. (Docket no. 20 at 4-8.)

### 1. Defendants' Failure to Answer Plaintiff's Complaint

4

Plaintiff first argues in response to Defendants' Motion that Defendants have failed to properly respond to his Complaint. (Docket no. 20 at 2.) But pursuant to 28 U.S.C. § 1997e, Defendants may waive their right to reply to a plaintiff's complaint without such a waiver being considered an admission. 28 U.S.C. § 1997e(g)(1). Because the Court has not ordered Defendants to file an Answer in this matter, Defendants are not required to do so. *See id.* ¶(g)(2).

### 2. Plaintiff's Claims Against Defendants in Their Official Capacities

Plaintiff has sued Defendants in their official and individual capacities. The Eleventh Amendment bars suits for money damages against state employees sued in their official capacity. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). Therefore, Plaintiff cannot prevail on his claims for monetary damages against Defendants in their official capacities. These claims should be dismissed.

### 3. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust all administrative remedies before filing a Section 1983 action. Specifically, the statute provides, "no action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). But "while the preferred practice is for inmates to complete the grievance process prior to the filing of an action and to attach to their complaint documentation of that fact, 'because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute.'" *Curry v. Scott*, 249 F.3d 493, 502 (6th Cir. 2001)(citations omitted). Notably, the Sixth Circuit "requires an inmate to make 'affirmative efforts to comply with the administrative

5

procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citing *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 224 (6th Cir. 2011)(internal quotation marks and citation omitted)).

The MDOC Policy Directive regarding prisoner grievances requires a prisoner to file a Step I grievance within five days of attempting to resolve the grievable issue with prison staff. MDOC Policy Directive 03.02.130 ¶V. The prisoner must then proceed through Steps II and III of the grievance process and receive a Step III response to complete the process. *See Muttscheler v. Martin*, No. 12-1221, 2013 WL 3730095, at *3-5 (W.D. Mich. July 15, 2013). The requirements for a Step I grievance are set forth, in relevant part, as follows:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

PD 03.02.130 ¶R. Thus, compliance with the PLRA requires that prisoners file a grievance against the person(s) they ultimately seek to sue. *See Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). This is critical because "[t]he point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey v. Pramstaller*, 603 F. 3d 322, 324 (6th Cir. 2010) (citation omitted). That is, a failure to include a future defendant in a grievance does not allow that defendant the ability to properly address the grievance at the initial level. Defendants argue that Plaintiff failed to exhaust his administrative remedies against Defendants Heyns and Burton because he failed to name them in his grievance. The undersigned agrees.

With regard to Defendant Burton, in his grievance, Plaintiff states that "C.O. GUBIS

Facilitated a transfer from [his] Work Assignment of 3½ years at Saginal Level I to Baraga Level I in RETALIATION for an overheard comment indicating that the Officer Kevin Ott assault incident at SRF was KARMA." (Docket no. 20 at 18.) Plaintiff contends that this implied some action by Defendant Burton because Defendant Burton was the transfer coordinator at SRF. But the PLRA does not require a prisoner to implicitly name those involved in the grievance; it requires a prisoner to "[include the] names of all those involved in the issue being grieved." Plaintiff failed to do so. And even assuming Plaintiff may not have known the name of the transfer coordinator, nothing prohibited him from alleging through his grievance that the "transfer coordinator" was involved in the dispute. His failure to do so prohibited Defendant Burton from having any opportunity to address this issue at the grievance level. Defendants' Motion should be granted with regard to Defendant Burton.

With regard to Defendant Heyns, Plaintiff acknowledges that he did not include Defendant Heyns in the grievance but asserts that he was not required to do so because the issue was nongrievable. (Docket no. 20 at 5.) Plaintiff notes that "Director Heyns' involvement in this matter did not occur until after his Step III investigation was completed." (*Id.*) It is unclear why Plaintiff asserts that his issues with Defendant Heyns were nongrievable, but to the extent Plaintiff asserts that Defendant Heyns harmed Plaintiff by denying his grievance, the denial of a grievance alone fails to state a claim under section 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Defendants' Motion should be granted with regard to Defendant Heyns.

### 4. Plaintiff's Claims Against Defendant Heyns

Even if Plaintiff had exhausted his administrative remedies, it is a well-established principle that § 1983 liability cannot be based on a mere failure to act or on a theory of respondeat

7

superior. *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206-07 (6th Cir. 1998). Rather, a supervisor must have "'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must allege that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Shehee*, 199 F.3d at 300 (quoting *Hays v. Jefferson Cnty.*, Ky., 668 F.2d 869, 874 (6th Cir. 1982)). Thus, to support a claim under Section 1983, a plaintiff must show that each defendant, whether in a supervisory capacity or as an actor, was personally involved in, or otherwise condoned, encouraged, or knowingly acquiesced in the alleged misconduct. *Id.*

Plaintiff does not allege that Defendant Heyns was actively involved in (or even aware of) his transfer. At most, Plaintiff alleges that Defendant Heyns was somehow involved in this matter by tacitly approving the denial of his Step III grievance because Defendant Heyns was "in control of the MDOC and his subordinates when *they* chose to violate the Plaintiff's First Amendment rights." (Docket no. 20 at 5 (emphasis added).) As noted, even if Defendant Heyns were aware of the grievance, denial of the grievance is insufficient to state a claim under Section 1983. But here, Plaintiff does not even claim that Defendant Heyns directly denied his grievance. This is precisely the type of supervisory conduct (or lack thereof) that cannot support a claim under Section 1983. Defendants' Motion should be granted with regard to Defendant Heyns.

### 5. Plaintiff's Substantive Claims of Retaliatory Transfer

Prison officials may not retaliate against inmates who have engaged in constitutionally protected activities or conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999). A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from

8

continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* (citations omitted). "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. . . . If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail." *Id.* at 399 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)).

The Sixth Circuit has repeatedly held that prison transfers are not evidence of an adverse action that would deter a person of ordinary firmness from engaging in protected conduct. *Hix v. Tennessee Dep't of Corr.*, 196 Fed. App'x 350, 358 (6th Cir. 2006). Further, a prisoner has no protected right to remain incarcerated at a particular institution. *Id.*; *Jewell v. Leroux*, 20 Fed. App'x 375, 377-78 (6th Cir. 2001). Nevertheless, where aggravating circumstances exist in a particular case, a prison transfer can be sufficiently adverse to support a retaliation claim. *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005); *Pasley v. Conerly*, 345 Fed. App'x 981 (6th Cir. 2009))); *see also Hix*, 196 Fed. App'x at 358. In general, such a claim requires foreseeable, negative consequences. *See id.* For example, in *Siggers-El*, "the [p]laintiff not only lost his high paying job that he needed in order to pay his attorney, but the transfer also made it more difficult for his attorney to visit with or represent him because he was moved further away from her." *Siggers-El*, 412 F.3d at 702. And in *Pasley*, the court found it sufficient that the defendant threatened, "first, to have [the plaintiff] moved out of the unit so that he would lose his job and, second, to use her influence with a warden to have him moved to a location where his family would not be able to visit him." *Pasley*, 345

Fed. App'x at 985.

Here, Plaintiff alleges that although SRF and AMF are both Level I facilities, they are significantly different in terms of dormitory style, comfort, family accessibility, law-library access, and work assignments. (Docket no. 20 at 6-8.) He even refers to the former as "minimum security" and the later as "maximum security." While the undersigned acknowledges these differences, "the Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." *Rhoades v. Chapman,* 452 U.S. 337, 349 (1981); *accord Bruggeman v. Paxton,* 15 F. App'x 202, 205 (6th Cir.2001) (noting that "the Constitution does not mandate comfortable prisons" and holding that a prisoner who was denied transfer to a prison or unit where he would have been more comfortable failed to state a claim). Likewise, Plaintiff had no constitutional right to remain at a prison where he was more comfortable. Thus, Plaintiff has not alleged that Defendants took any sufficient adverse action to support his claim. Defendants' Motion should be granted.

### 6. Qualified Immunity

Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "'The defense of qualified immunity protects officials from individual liability for monetary damages but not from declaratory or injunctive relief.'" *Top Flight Entertainment, Ltd. v. Schuette*, 729 F.3d 623, 635 n.2 (6th Cir. 2013) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001)).

The Sixth Circuit has set forth a tri-part test to determine whether a defendant is entitled to qualified immunity: whether (1) "the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred;" (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)); *see also Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999) (en banc) (noting that "objective legal reasonableness" is a distinct, third prong of the qualified immunity analysis). The court may, however, take up these considerations in any order. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

Qualified immunity, however, is best addressed after determining whether a plaintiff has stated a constitutional claim upon which relief can be granted: "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.  Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  Therefore, because the Court should dismiss Plaintiff's claims against Defendants on their merits, the Court need not address Defendants' assertion of qualified immunity.

### D. Conclusion

For the reasons stated above, the undersigned recommends that Defendants' Motion for

Summary Judgment [19] be granted. This matter should be dismissed in its entirety.

### III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 27, 2016         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated: January 27, 2016            s/ Lisa C. Bartlett
                                   Case Manager